IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BARBARA HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 1488 |
| | ) | |
| SISTERS OF ST. FRANCIS | ) | Judge Ronald A. Guzmán |
| HEALTH SERVICES, INC., | ) | |
| d/b/a ST. JAMES HOSPITAL | ) | |
| AND HEALTH CENTERS, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Barbara Hill ("Hill") has sued the Sisters of St. Francis Health Services, Inc., d/b/a St. James Hospital and Health Centers, ("St. James") for violating the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. 505/1, *et seq.*, breach of implied contract and unconscionability. Defendant has filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss all claims. For the reasons set forth below, defendant's motion is granted in part and denied in part.

### Background

On January 29, 2004, Hill received medical treatment at St. James, a non-profit hospital. (Am. Compl. ¶¶ 4-5.) Hill has no health insurance, little income and no significant assets. (*Id.* ¶ 6.) St. James billed Hill $892.72 for its services, much more than the hospital would have accepted as payment if plaintiff had been covered by health insurance. (*Id.* ¶¶ 7-8.) Because of her indigency, Hill has not paid the bill, which the hospital has turned over to a collection agency. (*Id.* ¶¶ 6, 9.) The hospital's agents never

told plaintiff she might be eligible for a charity care write-off of her bill. (*Id.* ¶ 9.) They also did not respond to her requests for a write-off application. (*Id.* ¶ 10.)

Hill contends that the amount St. James billed her exceeds the reasonable value of its services and its usual and customary charges to insurers. (*Id.* ¶ 12.) Hill contends that St. James has a policy of charging uninsured patients significantly more than insured patients, though it represents itself as a charitable organization to obtain tax-exempt status. (*Id.* ¶¶ 13-14.)

## Discussion

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

In Counts I and III, plaintiff alleges that defendant violated the ICFA by failing to provide her charity care and charging her an unreasonable amount for its services. To state a viable ICFA claim in the context of this case, plaintiff must allege that St. James engaged in an unfair practice in connection with trade or commerce, it intended plaintiff to rely on that practice, and the practice proximately caused her actual damage. *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002). To determine whether an act or practice is unfair, the Court considers whether it: (1) violates public policy; (2) is immoral, unethical, oppressive or unscrupulous; or (3) substantially harms consumers. *Id.* at 60-61. "All three criteria do not need to be satisfied to support a finding of unfairness.

2

A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Id.* at 961 (quotation omitted). Hill says St. James' practices meet all three criteria because they: (1) violate public policy as expressed in the Illinois Revenue Code's charitable organization exemption; (2) force ill, indigent people to accept the high billing rates or forego treatment; and (3) injure uninsured consumers, who are paying up to three times more than insured consumers for the same medical services.

The Court agrees. The Illinois courts have repeatedly held that tax laws in general, and the charitable exemption in particular, express the State's public policy. *See Palmateer v. Int'l Harvester Co.*, 421 N.E.2d 876, 878-79 (Ill. 1981) (stating that a statute expresses public policy if it "strike[s] at the heart of a citizen's social rights, duties, and responsibilities"); *Milward v. Paschen*, 157 N.E.2d 1, 6 (Ill. 1959) ("[T]he basis for [the charitable] tax exemption in Illinois is the relief that such tax exempt institutions provide to the taxpayers' burden."); *Russ v. Pension Consultants Co., Inc.*, 538 N.E.2d 693, 697 (Ill. App. Ct. 1989) ("We believe that an Illinois citizen's obedience to [federal and state tax] law . . . is a clearly mandated public policy of this state . . . ."); *Frederick v. Frederick*, 358 N.E.2d 398, 401 (Ill. App. Ct. 1976) (holding that a pre-nuptial agreement, "the purpose of which [was] to defraud the U.S. government out of tax money," was unenforceable because it violated public policy); *People ex rel. Redfern v. Hopewell Farms*, 291 N.E.2d 288, 290 (Ill. App. Ct. 1972) ("The fundamental ground upon which all exemptions in favor of charitable institutions are based is the benefit conferred upon the public by them and a consequent relief, to some extent, of the burden upon the State to care for and advance the interests of its citizens."). Thus, by alleging that St. James'

practices violate the charitable organization exemption of the Illinois Revenue Code, plaintiff has satisfied the first criterion in the unfair practice analysis.

With respect to the second criterion, which requires the Court to determine whether the alleged practices are oppressive or unscrupulous, plaintiff alleges that St. James: (1) characterizes itself as a charitable hospital to take advantage of the tax exemption; (2) fails to offer charity care to indigent patients or charity-care write offs of their bills; (3) rebuffed her attempts to apply for a charity-care write-off; (4) greatly inflates its charges for services provided to indigent, uninsured patients; (5) persistently tries to collect those inflated bills; and, as a result, (6) creates for indigent patients the Hobson's choice of foregoing medical treatment or obligating themselves to pay the unreasonable charges. Those allegations are sufficient to satisfy the second unfair practice criterion. *See Hill v. PS Ill. Trust*, No. 1-05-4000, 2006 WL 2739016, at *8-9 (Ill. App. Ct. Sept. 26, 2006) (allegations that storage facility sold plaintiff's property worth more than $25,000.00 to satisfy a two-month delinquency in his storage bill without giving him notice of the sale or returning any of the proceeds to him stated ICFA claim for oppressive and unfair practice); *Ekl v. Knecht*, 585 N.E.2d 156, 163 (Ill. App. Ct. 1991) (holding that plumber's threat to remove pipe and turn off plaintiff's water if she did not pay excessive bill was an oppressive and unscrupulous act); *People ex rel. Fahner v. Hedrich*, 438 N.E.2d 924, 929 (Ill. App. Ct. 1982) (holding that mobile-home park owner's practice of permitting residents to sell their mobile homes only if they paid him a large "transfer" fee was oppressive because the tenants had no realistic alternative to paying).

Hill has also adequately alleged that St. James' practices substantially injure consumers, the last criterion of the analysis. If, as plaintiff alleges, St. James charges

4

uninsured patients as much as four times the amount it charges insured patients, those consumers are being substantially injured.

St. James also argues that Hill's claims do not pertain to commercial activity as required by the ICFA. Defendant does not cite and this Court could not find any Illinois case that holds hospital billing practices to be outside the scope of the statute. Moreover, one court has suggested that such practices are within the purview of the statute. *See Evanston Hosp. v. Crane*, 627 N.E.2d 29, 35-36 (Ill. App. Ct. 1993) (holding that hospital practices related to care are not actionable but saying that "the commercial phases of medicine which directly affect the public are not at issue here").

Unlike the plaintiff in *Evanston Hospital*, Hill does not challenge the medical component of St. James' business, *i.e.*, the quality of the care she was given. She challenges the commercial component of its business, *i.e.*, the decisions it makes about whom to charge and how much those charges will be. Therefore, this case falls into the exception envisioned by *Evanston Hospital*.

The Illinois Supreme Court's decision in *Cripe v. Leiter*, 703 N.E.2d 100 (Ill. 1998), does not dictate a different result. In that case, a client, through her guardian, alleged that her lawyer violated the ICFA by charging excessive and unreasonable fees. *Id.* at 102. The *Cripe* court said that the ICFA does not apply to claims challenging attorney billing practices, because:

> an attorney's billing for legal services cannot be separated from the attorney-client relationship. Unlike ordinary merchant-consumer relationships, the relationship between attorney and client is fiduciary in nature. Although an attorney's fees in a particular case will generally be governed by the contractual arrangement between the attorney and the client, the attorney's fiduciary position prohibits the attorney from charging an excessive fee. Fraudulent or excessive billing of a client violates the attorney's fiduciary duty to the client. Thus, an attorney's billing of a client

5

> is not simply a "business" aspect of the practice of law, but is tied to the attorney's fiduciary obligation to the client. Because of that fiduciary relationship, the attorney's fees are subject to scrutiny and regulation not applicable to the fees for most commercial services. The Consumer Fraud Act therefore was not intended to apply to an attorney's billing of a client for legal services.

*Id.* at 107 (citations omitted).

Unlike the attorney-client relationship at issue in *Cripe*, there is no fiduciary relationship between a hospital and its patients with respect to billing practices. *See Burton v. William Beaumont Hosp.*, 373 F. Supp. 2d 707, 723-24 (E.D. Mich. 2005) ("While Michigan courts have recognized fiduciary relationships such as . . . doctors and patients, there is no authority for the proposition that a fiduciary relationship exists between a hospital and a patient for what plaintiffs complain of here, namely billing practices." (citation omitted)); *Morrell v. Wellstar Health Sys., Inc.*, 633 S.E.2d 68, 74 (Ga. App. Ct. 2006) ("[W]e hold that a nonprofit hospital generally has no fiduciary duty to a patient with respect to the price the hospital charges for medical care."). Thus, the reasoning of *Cripe* does not apply to this case.

In sum, the Court concludes that St. James' billing practices constitute commercial activity within the meaning of the ICFA. St. James' motion to dismiss Counts I and III for failure to satisfy that element of the claims is, therefore, denied.

St. James' last argument is that the ICFA claims are infirm because plaintiff alleges that she suffered only emotional damage, which does not constitute the "actual damage" required by the statute. In support of this argument, St. James cites *Greisz v. Household Bank (Illinois), N.A.*, 176 F.3d 1012 (7th Cir. 1999). The plaintiff in that case had purchased a furnace-air conditioner from one defendant using a credit card issued by the other defendant. *Id.* at 1014. When her credit card bill came, it showed a charge of

6

$5,080.00 for that purchase, about $1,000.00 higher than she thought it should be. *Id.* Plaintiff refused to pay any part of the bill and filed suit against defendants for, among other things, violating the ICFA. *Id.*

The defendant bank moved for summary judgment arguing that plaintiff had failed to prove its actions caused her any actual damage. The district noted that emotional damage, the only kind plaintiff alleged, constitutes actual damage under Illinois law. *Greisz v. Household Bank (Ill.) N.A.*, 8 F. Supp. 2d 1031, 1043 (N.D. Ill. 1998). Nonetheless, it granted summary judgment to the bank because plaintiff had "provide[d] absolutely no evidence to support her claim that [the bank] [had] caused her emotional distress." *Id.* at 1044; *see Fogle v. William Chevrolet/GEO, Inc.*, No. 99 C 5960, 2000 WL 1129983, at *6 (N.D. Ill. Aug. 9, 2000) ("While a plaintiff can recover for intangible actual damages resulting from mental suffering, such as aggravation and inconvenience, under the ICFA . . . plaintiffs have not presented a shred of evidence to establish a genuine issue of material fact on damages such that a trial is required." (citation omitted)).

The Seventh Circuit affirmed the *Greisz* trial court's decision. In relevant part, the court said:

> The state-law claims failed for a variety of reasons, most clearly because of the plaintiff's failure to establish any damages for which relief can be obtained under the Illinois laws that she is suing upon. She claims that she "almost fainted" when she saw the alleged overcharge on her credit card statement. . . . The state laws on which she . . . is suing require, in a case in which the plaintiff cannot show any pecuniary loss but only an emotional injury, proof of a *serious* degree of distress caused by *outrageous* and not merely unlawful behavior by the defendant. *Dwyer v. American Express Co.*, 273 Ill. App. 3d 742, 210 Ill. Dec. 375, 652 N.E.2d 1351, 1357 (1995); *Kleidon v. Rizza Chevrolet, Inc.*, 173 Ill. App. 3d 116, 122 Ill. Dec. 876, 527 N.E.2d 374, 377 (1988); *cf. Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 4 Ill. Dec. 652, 360 N.E.2d 765 (1976). Neither condition is satisfied here.

*Greisz*, 176 F.3d at 1016. That language, St. James contends, forecloses plaintiff's ICFA claims because she has not alleged pecuniary injury or that her emotional injury is serious and was caused by St. James' outrageous behavior.

The Court disagrees. The decision of the district court in *Greisz* was not, as the appellate opinion suggests, that the bank was entitled to summary judgment because plaintiff had not offered evidence of serious harm and outrageous conduct. On the contrary, the court said that ICFA actual damage includes emotional distress, but there was not enough evidence that plaintiff had suffered distress to warrant a trial on her claim. *Greisz*, 8 F. Supp. 2d at 1043-44. As a result, though the appellate court commented on it, the issue of whether emotional damages constitute "actual damage" for the ICFA was not squarely presented to the court.

Moreover, none of the state cases cited by the court of appeals holds that actual damage, in the absence of pecuniary harm, means only serious harm caused by outrageous conduct. *See generally Public Fin.*, 360 N.E.2d 765 (Ill. 1976); *Dwyer*, 652 N.E.2d 1351 (Ill. App. Ct. 1995); *Kleidon*, 527 N.E.2d 374 (Ill. App. Ct. 1988). Indeed, *Dwyer* teaches that emotional damage in ICFA cases must be alleged and proved not simply assumed, an apparent acknowledgment that provable emotional damage of any degree can support an ICFA claim. *See Dwyer*, 652 N.E.2d at 1357. The other two cases, *Kleidon* and *Public Finance*, discuss serious harm and outrageous conduct, but neither holds that they are required for an ICFA claim. Rather, both cases discuss seriousness and outrageousness as elements of the tort of intentional infliction of emotional distress, a claim not at issue here. *See Public Fin.*, 360 N.E.2d at 767-68; *Kleidon*, 527 N.E.2d at 377.

8

In short, plaintiff has adequately alleged all of the elements of an ICFA claim in Counts I and III.[1] St. James' motion to dismiss those counts is, therefore, denied.

In Count II, plaintiff alleges that St. James breached its implied contract with her. "[T]he only difference between an express contract and a contract implied in fact is that in the former the parties arrive at their agreement by words . . . while in the latter their agreement is arrived at by a consideration of their acts and conduct." *Owen Wagener & Co. v. U.S. Bank*, 697 N.E.2d 902, 907 (Ill. App. Ct. 1998). To state a viable breach of contract claim, plaintiff must allege that she had a valid contract with St. James, she performed all of her obligations under it, St. James breached the contract, and plaintiff was damaged as a result. *Klem v. Mann*, 665 N.E.2d 514, 518 (Ill. App. Ct. 1996).

St. James says that Count II is flawed because it does not identify the obligations plaintiff has under the contract or allege that she performed them. The Court agrees, in part. It is reasonable to infer from plaintiff's allegations that her obligation under the contract was to pay the hospital the reasonable value of the medical services it provided to her. Plaintiff does not, however, allege that she did so. Absent that allegation, plaintiff has not stated a viable breach of contract claim.

In the last count of her amended complaint, plaintiff invokes the doctrine of unconscionability. That doctrine provides a basis for nullifying a contract or one of its

---

[1] St. James also says in its opening brief that plaintiff's ICFA claims must be pleaded with particularity as required by Rule 9(b). (*See* Mem. Supp. Mot. Dismiss at 3.) A single sentence, however, is the sum total of "argument" St. James presents on this issue in that brief. By failing to develop it in the opening brief, St. James has waived this argument, a waiver that cannot be cured by its reply. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived."), *cert. denied*, 545 U.S. 1115 (2005); *Autotech Tech. Ltd. P'ship v. Automationdirect.com, Inc.*, 235 F.R.D. 435, 441 (N.D. Ill. 2006) ("[A]n argument that is neither developed nor supported until the filing of a reply brief does not warrant consideration.").

terms if it "is so difficult to find, read or understand that the plaintiff cannot fairly be said to have been aware [s]he was agreeing to it" or "inordinately one-sided in one party's favor." *Razor v. Hyundai Motor Am.*, 854 N.E.2d 607, 622 (Ill. 2006), *pet. for cert. filed*, 2006 WL 3425191 (Ill. Nov. 11, 2006) (No. 06-746). It is reasonable to infer from her allegations that Hill claims the implied contract, as whole, is unconscionable because: (1) St. James, by virtue of its tax-exempt status, is not supposed to charge indigent patients for services; and (2) it charged Hill despite her indigency; and (3) Hill had no bargaining power; she had to agree to pay or forego necessary medical treatment. (*See* Am. Compl. ¶ 37.) Those allegations are sufficient to state a claim under the doctrine of unconscionability.

## Conclusion

For the reasons set forth above, defendant's motion to dismiss [doc. no. 23] is granted in part and denied in part. The motion is granted with respect to Count II, which is dismissed without prejudice. In all other respects, the motion is denied. Plaintiff has twenty-one days from the date of this Memorandum Opinion and Order to amend Count II, if she can do so and remain in compliance with Rule 11. If plaintiff fails to amend in that time period, Count II will be dismissed with prejudice.

**SO ORDERED.**  ENTER: 12/20/06

HON. RONALD A. GUZMAN
United States District Judge